TRIVELLA & FORTE, LLP
*Attorneys for the Plaintiffs*
1311 Mamaroneck Avenue, Suite 170
White Plains, NY 10605
(914) 949-9075

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS GESUALDI, LOUIS BISIGNANO, ANTHONY:
D'AQUILA, MICHAEL O'TOOLE, MICHAEL:
BOURGAL, FRANK H. FINKEL, JOSEPH A. FERRARA,:
SR., MARC HERBST, DENISE RICHARDSON, and:
THOMAS CORBETT as Trustees and fiduciaries of the:
Local 282 Welfare Trust Fund, the Local 282 Pension Trust:   Case No.:
Fund, the Local 282 Annuity Trust Fund, the Local 282 Job:
Training Trust Fund, and the Local 282 Vacation and Sick:   **COMPLAINT**
Leave Trust Fund,                                       :
                                    Plaintiffs,        :
                    -against-                          :
                                                       :
NAVILLUS   TILE,   INC.,   d/b/a   NAVILLUS:
CONTRACTING,   ADVANCED   CONTRACTING:
SOLUTIONS LLC, d/b/a ACS-NY LLC, TIME SQUARE:
CONSTRUCTION, INC., HDK CONSTRUCTION, LLC.,:
DONAL   O'SULLIVAN,   KEVIN   O'SULLIVAN,   and:
HELEN O'SULLIVAN, all jointly and severally liable.   :
                                    Defendants.        :
------------------------------------------------------------------------x

Plaintiffs, Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole,

Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson, and

Thomas Corbett as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282

Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund,

and the Local 282 Vacation and Sick Leave Trust Fund, (collectively, the "Funds"), for their

Complaint allege as follows:

## INTRODUCTION

This is an action by the Trustees and fiduciaries of employee benefit plans for injunctive

and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145 and Section

301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 to recover

delinquent contributions owed to the Funds pursuant to collective bargaining agreements and

plan documents from an employer and its alter egos and principal officers, who fraudulently

schemed to avoid payment of contributions to the Funds by establishing and using alter ego

entities to perform work covered by the employer's collective bargaining agreements with the

Local 282, International Brotherhood of Teamsters ("Local 282").  The Trustees seek to collect

from Defendants, jointly and severally, delinquent contributions, interest, liquidated damages,

attorneys' fees and costs incurred by the Funds in seeking to collect the aforementioned amounts

and in prosecuting this action.  The Trustees also seek to collect other amounts which may, upon

information and belief, become due and owing during the pendency of this litigation.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29

U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(f), and 1145.

2.      This Court also has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185,

in that Defendants' actions violated the collective bargaining agreement between the employer

and Local 282.

3.      Venue lies in this Southern District of New York under 29 U.S.C. § 1132(e)(2), as

the Defendants are located in this District and a substantial amount of the actions complained of

occurred in this District.

## THE PARTIES

4.     Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. § 1002(21)(A), as they have discretion and control over the assets and administration of the Funds.

5.     The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and § 1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

6.      The Funds are jointly administered by a Board of Trustees, comprised of an equal numbers of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

7.     The Funds were established pursuant to the terms of various collective bargaining agreements between Local 282, International Brotherhood of Teamsters ("Local 282" or the "Union"), a labor organization representing workers in an industry affecting commerce, and various employers which are required to make contributions to the Funds on behalf of their workers covered by the collective bargaining agreements.

8.     The Funds are maintained pursuant to the terms of the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), for the purposes of collecting and receiving contributions from the Employers and providing benefits to eligible participants and their beneficiaries.  The Funds provide various pension, health and welfare, annuity, job training, vacation and sick leave, and legal services benefits to covered workers, retirees and their dependents.

9.      The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  The Funds are third-party beneficiaries of the collective bargaining agreements.

10.     Defendant, Navillus Tile, Inc., d/b/a Navillus Contracting ("Navillus") is and at all times relevant to this action has been, a New York corporation, authorized to do business in the State of New York.

11.     At all times relevant herein, Navillus maintains its principal place of business at 575 5th Avenue, 29th Floor, New York, New York 10017.

12.     Navillus is, and at all times relevant to this action has been, engaged in the business of heavy construction, concrete construction, high rise construction and trucking within the State of New York.

13.     Navillus is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

14.     At all times relevant to this action the owners of Navillus are Donal O'Sullivan and Kevin O'Sullivan.

15.     Upon information and belief, Donal O'Sullivan's business address is 575 5th Avenue, 29th Floor, New York, New York 10017.

16.     Advanced Contracting Solutions LLC ("ACS") is and at all times relevant to this action has been, a Delaware limited liability company, authorized to do business in the State of New York under the name ACS-NY LLC.

17.     Upon information and belief, ACS maintains its principal place of business 314 East 41st Street, Apt. 103C, New York, New York 10017.

18.     Upon information and belief, at all relevant times, 314 East 41st Street, Apt. 103C, New York, New York 10017, was a residential apartment owned by Kathleen O'Sullivan.

19.     Upon information and belief, Kathleen O'Sullivan is the wife of Defendant, Donal O'Sullivan.

20.     ACS currently maintains offices at 2602 1st Street, Astoria, New York.

21.     At all relevant times, Donal O'Sullivan controlled the management decisions of ACS.

22.     ACS is, and at all times relevant to this action has been, engaged in the business of heavy construction, concrete construction, high rise construction and trucking within the State of New York.

23.     Upon information and belief, ACS is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

24.     Time Square Construction, Inc., ("Time Square") is and at all times relevant to this action has been, a foreign Delaware corporation, authorized to do business in the State of New York, maintaining its principle offices for doing business at 355 Lexington Avenue, 17th Floor, New York, New York 10017.

25.     At all relevant times, Times Square was owned, by Helen O'Sullivan, Donal O'Sullivan, and Kevin O'Sullivan.

26.     Upon information and belief, Kevin O'Sullivan and Donal O' Sullivan were managing members of Time Square, and were responsible for making company policy and rendering management decisions.

27.     Time Square is, and at all times relevant to this action has been, engaged in the business of heavy construction, concrete construction, high rise construction and trucking within the State of New York.

28.     Upon information and belief, Time Square is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

29.     HDK Construction, LLC, ("HDK") is, and at all times relevant to this action has been, a foreign Delaware corporation, authorized to do business in the State of New York, maintaining its principle offices for doing business at 355 Lexington Avenue, 17th Floor, New York, New York 10017.

30.     At all relevant times, HDK was owned by Helen O'Sullivan, Donal O'Sullivan, and Kevin O'Sullivan.

31.     HDK is, and at all times relevant to this action has been, engaged in the business of heavy construction, concrete construction, high rise construction, trucking and payroll services within the State of New York.

32.     Upon information and belief, Time Square is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

## FACTUAL BASIS FOR CLAIMS

### A. The Collective Bargaining Agreements, the Trust Agreement, and the Obligation to Contribute to the Funds

33.     Navillus is a member of a multiemployer collective bargaining association known as the Building Contractors' Association, Inc. ("BCA").  Navillus designated the BCA as its collective bargaining representative.  As part of the BCA, Navillus has been bound to successive

collective bargaining agreements with Local 282.  The most recent collective bargaining agreement between the parties is for the periods July 1, 2005 through June 30, 2009 (the "2005-2009 CBA"), July 1, 2009 through June 30, 2013 (the "2009-2013 CBA"), and July 1, 2013 to June 30, 2016 ("2013-2016 CBA") (collectively the "CBAs").

34.     The CBAs and the predecessor collective bargaining agreements between Local 282 and Navillus establish the terms and conditions of employment for all drivers who are employed by the Employer.

35.     The CBAs expressly provide that the Employer is bound to the Trust Agreement and incorporate the Trust Agreement by reference into the CBAs.  Specifically, Section 18(G) of the CBAs provide, in pertinent part, that the Trust Agreement is "made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer…hereby agree(s) that upon the execution of this Agreement they shall be deemed [a party] to this Trust Agreement []."

36.     The Trust Agreement authorizes the Trustees to construe the provisions and the terms used therein, and provides that any construction adopted by the Trustees in good faith is binding upon the employers.

37.     The CBAs, together with the Trust Agreement require Employers to contribute to the Funds, on behalf of its workers who performed work covered by the CBAs, at specified rates for each hour of covered work, subject to certain limitations and premium payments set forth therein.

38.     The CBAs and the Trust Agreement require Employers, including Navillus, to submit detailed written reports ("remittance reports") and contributions to the Funds, which identified those workers who performed work covered by the CBAs and to state the number of

hours each such workers worked in covered employment. These remittance reports and contributions are required to be submitted to the Funds no later than 45 days after the end of the month in which the work covered by the CBAs is performed.

39.     The remittance reports are intended to be an Employer's monthly statement of the number of hours worked in covered employment.

40.     Employers are required to sign the remittance reports and certify that the information contained on the remittance reports are accurate.

41.     The Funds rely on the remittance reports to determine the level of benefits, if any, that are to be provided to those workers reported by an Employer.

42.     The Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for: (i) The delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment[1]; (iii) an amount equal to the greater of: (a) Interest on the unpaid contributions, or (b) liquidated damages in the form of 20 percent of the unpaid contributions; and (iv) the Funds' attorneys' fees and costs.

**B.  Contractual Obligations With Respect To Hired Trucks**

43.     Pursuant to the CBAs, the Employer agreed not to engage in certain conduct in order to protect and preserve the work opportunities for covered employees.

44.     Section 9(B)(1) of the CBAs provide that "[t]he driving of all trucks owned, operated or under the control of the Employer shall be performed by Employees of the Employer and covered by this Agreement."

---

[1] Pursuant to an Amendment to the Trust Agreement, effective May 1, 2013, interest is due on contributions "from the date when payment was due to the date when payment was made."

45.     Moreover, Section 9(B)(2) of the CBAs provide that "[t]he performance of all on-site truck driving on any construction job site, in connection with work that the Employer is contracted to be responsible for, mange or perform, shall be done by the Employees of the Employer and is covered by the Agreement."

46.     Section 35 of the CBAs prohibits the Employer from establishing or participating in a double breasted operation within the geographical operation of Local 282, namely the City of New York, Nassau, and Suffolk Counties, or outside that area if the work is to be performed within the area.

47.     Section 9(B)(6) of the CBAs also imposes certain limitations on an Employer and/or Contractor with respect to the use of outside trucks and equipment suppliers.  Section 9(B)(6)  provides: "The Employer may not hire outside manned trucks, or contract or subcontract any trucking until peak number of Employees on the Employer's seniority list … have been afford the opportunity to work."

48.     Section 9(B)(3) of the CBAs imposes certain limitations on an Employer and/or Contractor regarding the use of outside truck and equipment suppliers.  Section 9(B)(3)  of the CBAs provides that:

> Any person, including but not limited to any vendor, contractor subcontractor, construction manager or agent thereof, who makes a delivery to or pick-up from a construction job site of material, supplies or equipment in connection with work that the Employer is contracted to be responsible for, manage or perform shall not, in addition to or in connection with such delivery or pick-up, perform any work covered by this Agreement, unless the person's employees performing the covered work enjoy wages, hours and benefits equivalent to or better than those set forth in this Agreement.

49.     Section 9(B)(7) of the CBAs further requires that "Every Employer who accepts a job, whether as general contractor, construction manager (however described), prime contractor,

or subcontractor, shall immediately notify the Union of the Job.  Prior to the commencement of any work at the job site, the Employer shall meet with the Union to discuss conditions on the job and application of the Agreement to those conditions"

50.     Section 9(B)(9) of the CBAs expressly prohibits the Employer from participating in any scheme, device or plan (either directly or indirectly through relatives, business associates or employees) to defeat the terms and intent of the CBAs.

**C.  Projects Engaged in by Defendants**

51.     Navillus, ACS, Time Square and HDK (collectively "Defendant Companies") all engage in similar construction work as "masonry and tile contractor, concrete superstructure contractors" within the jurisdictional area covered by the Funds, namely New York City.

52.     The Defendant Companies all operate in the high rise construction industry.

53.     The Defendant Companies employ carpenters, lathers, concrete laborers and truck drivers to engage in concrete construction projects.

54.     Part and parcel to the Defendant Companies' work as concrete superstructure contractors, is the hiring of trucks used for the transportation of materials and equipment which is work covered by the CBAs.

55.     Work performed by Defendant Companies is essentially identical.

56.     Since 2000, Navillus has worked on at least the following projects:

- World Trade Center;
- 1717 Broadway;
- 150 Charles Street;
- 400 5th Avenue;
- 309 5th Avenue;
- 35 W. 21st Street;
- 785 8th Avenue.

57.     Since its inception, ACS has performed similar work on the following projects:

- 555 W. 21st Street;
- 1191 Boston Road;
- One DeKalb Avenue;
- 205 E. 92nd Street;
- 860 Washington Street;
- 421 Kent Avenue;
- 111 W. 57th Street;
- 20 East End Avenue;
- 180 Myrtle Avenue;
- 68 Charlton Street.

58.     Time Square has performed similar work on the 400 W. 155th Street project.

59.     HDK facilitated payroll services for Navillus, ACS, and Time Square on the various project listed in paragraphs "56" through "58" above.

60.     ACS began working at 1911 Boston Road, Bronx, New York, prior to its formation and prior to being authorized to do business in New York.

61.     As a newly formed entity, upon information and belief, ACS could not have obtained the construction contract or necessary construction bonds unless its work was guaranteed by Time Square or Navillus.

62.     Navillus, ACS and Time Square all use Construction Risk Partners as the sole broker for their construction bonds.

### D.   **The Relationship Between All Defendant Companies**

63.     At all times relevant to this action, the Defendant Companies all were engaged in, and continue to engage in, a common business enterprise.

64.      At all times relevant to this action, the Defendant Companies were all part of the High Rise construction industry.

65.     At all times relevant to this action, the Defendant Companies all performed work covered by the CBAs.

66.     Upon information and belief, ACS, Time Square and HDK are affiliates of

Navillus as defined in the Trust Agreement.

67.     Upon information and belief, the Defendant Companies all share common management, as Donal O'Sullivan made management decisions for all the Defendant Companies.

68.     Upon information and belief, the Defendant Companies share centralized control of labor relations.

69.     Upon information and belief, Defendant Companies are engaged in a common business enterprise.

70.     Upon information and belief, at all times relevant to this action, the Defendant Companies shared common operations.

71.     Upon information and belief, at all times relevant to this action, the Defendant Companies shared common supervision.

72.     Upon information and belief, at all times relevant to this action, the Defendant Companies shared a common business purpose.

73.     Upon information and belief, the Defendant Companies share common equipment.

74.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies shared similar working conditions.

75.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies shared similar job classifications.

76.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies shared similar skills and job functions.

77.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies performed similar services for customers.

78.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies worked out of the same location.

79.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies shared common hiring practices.

80.     Upon information and belief, at all times relevant to this action, drivers hired by Defendant Companies comprise a single bargaining unit.

81.     Upon information and belief, Navillus used the other Defendant Companies to avoid obligations under the CBAs, including its obligation to make contributions to the Funds for work performed by covered workers.

82.     Upon information and belief, drivers hired by ACS, Time Square and/or HDK performed work covered by the CBAs.

83.     Upon information and belief, Navillus failed to report the work performed by drivers hired by ACS, Time Square and/or HDK to the Funds and failed to remit contributions to the Funds for the hours worked in covered employment by drivers.

84.     Based on the foregoing, Defendant Companies have been operated in such a way that they are alter egos of each other.

85.     Based on the foregoing, Defendant Companies have been operated in such a way that they constitute a single employer.

86.     Based on the foregoing, Defendant Companies have been operated in such a way that they constitute a double breasted employer, established to avoid Navillus' obligations to the Funds, in violation of the CBAs.

87.     As an alter ego, single employer and/or double breasted employer, ACS, Time Square and HDK are bound to the CBAs between Local 282 and Navillus by and through Navillus' membership in the Building Contractors Association (BCA).  Navillus was required to report the hours worked by ACS, Time Square, and HDK drivers to the Funds and remit contributions for the hours worked.  Navillus is liable for the all hours paid to workers who performed covered work.

88.     As alter egos, single employers and/or double breasted employers with Navillus, ACS, Time Square, and HDK are bound to the CBAs between Local 282 and Navillus and are, therefore, jointly and severally liable for all hours paid to workers who performed covered work.

**E.  The Specific Relationship Between Navillus and ACS**

89.     At all times relevant to this action, Navillus and ACS shared common facilities located at 26-01 First Street, Queens, NY.

90.     At all times relevant to this action, Navillus and ACS shared common facilities located at 27-02 First Street, Queens, NY.

91.     Both of these locations, owned and operated by ACS and Navillus together, are less than 100 yards from each other.

92.     At all times relevant to this action, Navillus and ACS shared common ownership.

93.     Upon information and belief, Donal O'Sullivan "lent" $500,000 to ACS, and further lent $1.3 Million to ACS through a company known as KCK Solutions LLC.

94.     Upon information and belief, Helen O' Sullivan used her Navillus credit card to pay for fees to create ACS.

95.     Eoin Moriarty, the "owner" of ACS, was the controller of Navillus for six years prior to ACS's formation in 2013.

96.     On reports to the New York City Housing Preservation Development agency relating to the Boston Road Project, Eoin Moriarty is listed as an "Accounts Admin" – not an owner of ACS.

97.     When ACS was formed in 2013, its sole member was Mr. Peter Downes, the Vice President of Navillus.

98.     Donal O'Sullivan corresponded with the general contractor of the Boston Road Project on behalf of ACS.

99.     Upon information and belief, Donal O'Sullivan, from July 15, 2013 to January 25, 2015, communicated with ACS executives via telephone call or text message 899 times.

100.    ACS's managers were all previously employed by Navillus, Time Square, or HDK, including, but not limited to: Patrick Corcoran, John Kuefer, Hazelyn Corcoran, and John Brennan.

101.    In January and February 2014, Navillus, Time Square and ACS sent identical letters, with the exact same typographical error, to New York City Department of Buildings.  All three letters were signed by Mr. John Kuefner and notarized by Ms. Hazelyn Corcoran.

102.    Upon information and belief, Navillus continued to supply health insurance for ACS executives after they left Navillus and became ACS employees.

103.    At all times relevant to this action, Navillus and ACS shared employees.

104.    Mr. David Ashe was originally employed by Time Square, then was employed by Navillus, and now is employed by ACS.

105.    Other employees who worked for Navillus and ACS include: Messrs. Ian Rubenstein, David Dragone, Ezequiel Arias, Vincent Cienfuegos, Fabian Haredia, Tashi Tsering, Leandro Andrade, and John Fisher.

106.    ACS employed individuals who performed covered work under the CBAs.

107.    At all times relevant to this action, Navillus and ACS shared equipment.

108.    ACS utilized Navillus' "forms" when performing work at 551 West 21st Street, New York, New York.

109.    Upon information and belief, at all times relevant to this action, Navillus and ACS disregarded corporate formalities and transferred funds between Navillus and ACS.

110.    Upon information and belief, as a result of the foregoing, Navillus and ACS share an alter ego, or single employer relationship.

**F.  The Relationship between Time Square and HDK**

111.    Upon information and belief, Time Square and HDK are the same company and employer.

112.    Time Square and HDK share the same place of business: 355 Lexington Avenue, 17th Floor, New York, New York 10017.

113.    Time Square and HDK share the same phone number: (212) 687-1400.

114.    HDK and Time Square have been joint insureds under the same Workers Compensation policy (National Union Fire Insurance, Policy No. WC051756964).

115.    Upon information and belief, Time Square and HDK share common management, as Donal, Kevin and Helen O'Sullivan made management decisions for both companies.

116.    Upon information and belief, Time Square and HDK share centralized control of labor relations; engage in a common business enterprise; share common operations; share common supervision; share a common business purpose; and share common equipment.

**G.  Relationship Between Navillus, HDK and Time Square**

117. Upon information and belief, Time Square and HDK are affiliates of Navillus as that term is defined in the Trust Agreement.

118. Upon information and belief, Time Square/HDK and Navillus share common management, as Mr. Donal O'Sullivan made management decisions for all the Companies.

119. Donal O'Sullivan negotiated the project for Time Square at 400 W. 155th Street.

120. Relating to the 400 W. 155th Street project, the general contractor wrote an email to Donal O'Sullivan, stating "I shook your hand on this deal, nobody else's."

121. Donal O'Sullivan was in charge of the work performed by Time Square on the 400 W. 155th Street Project.

122. A Disclosure Statement by a corporation 98% owned by Kevin and Donal O'Sullivan, dated October 31, 2011, which was filed in the case of *In re 785 Partners LLC*, No. 11-13702 (SMB)(S.D.N.Y), stated that "The O'Sullivans own Time Square Construction and Development …, and Navillus Tile, Inc."

123. In a video prepared in connection with the sale of condominiums at a Time Square development known as 1 Vernon Jackson, Kevin O'Sullivan stated: "We have two construction companies, one called Navillus … We have another company which is the development wing of our business, Time Square."

124. Upon information and belief, Time Square/HDK and Navillus share centralized control of labor relations, are engaged in a common business enterprise, shared common operations, shared common supervision, shared a common business purpose, and share common equipment.

125. In 2006, a Mitsubishi Galant, VIN No. 4A3AA46GXYE160671, was registered to Time Square.  By 2008, the same vehicle was registered to Navillus.

126.     Time Square operated a truck, VIN No. 1GPD7H1J3TJ503709, which at all relevant times was registered to Navillus.

127.     Navillus' equipment marked with "N", "NAV" or "NAVILLUS" was used by Time Square.

128.     In, or about, August 2012, trucks operated by Time Square were loaded at a facility operated by Navillus.

129.     In, or about, August 2012, Time Square trucks were parked at Navillus' facility.

130.     In, or about, August 2012, Navillus workers operated a Time Square truck and forklift at a Navillus facility.

131.     Time Square and Navillus share a construction yard at 29-01 Review Avenue, Queens, New York.

132.     Time Square and Navillus have also shared a construction yard in New Jersey.

133.     Upon information and belief, at all times relevant to this action, drivers hired by Navillus, Time Square, and HDK shared similar working conditions, similar job classifications, similar skills and job functions, performed similar services for customers; worked out of the same location; and shared common hiring practices.

134.     Navillus performed concrete construction work for Time Square at the 785 8th Avenue and 47 East 34th Street projects.

135.     Upon information and belief, at all times relevant to this action, drivers hired by Navillus, Time Square and HDK comprised a single bargaining unit.

136.     Upon information and belief, Navillus used Time Square and HDK to avoid its obligations under the CBAs, including its obligation to make contributions to the Funds for work performed by covered workers.

137.    Upon information and belief, drivers hired by Time Square and HDK performed work covered by the CBAs.

138.    Upon information and belief, Navillus failed to report the work performed by drivers hired by Time Square and HDK to the Funds and failed to remit contributions to the Funds for the hours worked in covered employment by drivers.

139.    Based on the foregoing, Navillus, Time Square and HDK have been operated in such a way that they are alter egos of each other.

140.    Based on the foregoing, Navillus, Time Square and HDK have been operated in such a way that they constitute a single employer.

141.    Based on the foregoing, Navillus, Time Square and HDK have been operated in such a way that they constitute a double breasted employer, established to avoid Navillus' obligations to the Funds, in violation of the CBAs.

142.    As an alter ego, single employer and/or double breasted employer, Time Square and HDK are bound to the CBAs between Local 282 and Navillus.  Navillus was required to report the hours worked by Time Square's and HDK's drivers to the Funds and remit payment of contributions for the hours worked.  Navillus is therefore liable for the all hours paid to workers who performed covered work.

**H.  Other Amounts**

143.    Upon information and belief, additional amounts may continue to become due and owing by the Defendants to the Funds during the pendency of this action.

## AS AND FOR A FIRST CAUSE OF ACTION

144.    Plaintiffs' repeat and reallege each and every allegation contained in paragraphs "1" through "143" as if fully set forth herein.

145.    Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement… [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

146.    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary: (A) To enjoin any act or practice which violates any provision of this title or the terms of the plan; or (B) to obtain other appropriate equitable relief; (i) to redress such violation; or (ii) to enforce any provision of this title or the terms of the plan."

147.    Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that, "[i]n any action bought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:

    a.  The unpaid contributions,
    b.  interest on the unpaid contributions,
    c.  an amount equal to the greater of-
        i.  interest on the unpaid contributions, or
        ii.  liquidated damages…in an amount not in excess of 20 percent of the [unpaid contributions],
    d.  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    e.  such other legal or equitable relief as the court deems appropriate…."

148.    Navillus' failure to remit contributions to the Funds for hours worked by individuals performing covered work pursuant to the CBAs, constitutes a failure to make contributions in accordance with the terms of the applicable CBAs, in violation of §§ 502 and 515 of ERISA 29 U.S.C. §§ 1132 and 1145, giving rise to an action under § 502(a)(3) or ERISA, 29 U.S.C. § 1132(a)(3).

149.    ACS, Time Square, and HDK are alter egos of Navillus and therefore, Navillus is obligated, under the CBAs to make contributions for covered work performed by ACS, Time

Square, and HDK to the Funds.

150.     Defendants, by virtue of their failure to remit the unpaid contributions, are subject to an injunction ordering them to immediately pay all unpaid contributions. Public policy and the balance of equities favors injunctive relief against Defendants requiring the Defendants to pay all past and current delinquencies to the Funds. Without injunctive relief the Funds and their participants and beneficiaries will be irreparably harmed.

151.     Defendants are also required to pay interest on the unpaid contributions from the date they were due to the date they are received by the Funds, plus liquidated damages, audit costs, attorneys' fees and costs in accordance with Article IX, Section 3 of the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

152.     Defendants by failing to pay contributions, interest and additional damages, as required by the CBAs and the Trust Agreement, have violated Section 515 of ERISA, 29 U.S.C. §1145, in that they have  failed to make contributions in accordance with the terms of the plan documents of the Funds, supporting an action under 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and are subject to the remedies under Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## AS AND FOR A SECOND CAUSE OF ACTION

153.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "152" as if fully set forth herein.

154.      Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

155.     Section 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

156.     Section 35 of the CBAs prohibited Navillus from establishing or participating in a double breasted operation.

157.     Section 9(B)(3) of the CBAs prohibited Navillus from hiring an outside truck or equipment supplier unless the drivers employed by the truck or equipment supplier receive wages, working conditions, benefits and a standard of employment no less favorable than those provided in the Local 282 collective bargaining agreement.

158.     Navillus, through its alter egos ACS, Time Square and HDK, hired workers to perform covered work who received wages, working conditions, benefits and a standard of employment less favorable than those provided in the CBAs.

159.     Navillus and its alter egos ACS, Time Square and HDK failed to remit contribution payments to the Funds for the hours worked by these workers, in violation the CBAs and the Trust Agreement.

160.     The Funds are entitled, pursuant to LMRA Section 301(a) and the CBAs Trust Agreement, to collect the unpaid contributions, interest, liquidated damages, attorneys' fees and costs associated with the unpaid contributions.

## AS AND FOR A THIRD CAUSE OF ACTION

161.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "160" as if fully set forth herein.

162.     Donal O'Sullivan, Kevin O' Sullivan, Helen O'Sullivan, Navillus, ACS, Time Square, and HDK knowingly committed fraud against the Funds by creating and orchestrating a scheme to hire outside non-union workers through ACS, Time Square, and HDK and omit hours worked in covered employment by ACS, Time Square, and HDK from the remittance reports sent by Navillus to the Funds.

163.     Donal O'Sullivan, Kevin O' Sullivan, and Helen O'Sullivan are, upon information and belief, all siblings.

164.     Helen O'Sullivan is an owner of HDK, Time Square, and Navillus.

165.     Upon information and belief, Helen O'Sullivan is also an owner of ACS.

166.     Donal O'Sullivan, Kevin O'Sullivan, and Helen O'Sullivan made, or caused to be made, materially false representations and omissions of existing facts to the Funds by filing false remittance reports with the Funds that failed to disclose the hours being worked in covered employment through ACS, Time Square and HDK and knowingly failing to pay contributions to the Funds.

167.     The Funds reasonably relied to their detriment on the material and false representations and omissions made by Donal O'Sullivan, Kevin O'Sullivan, and Helen O'Sullivan concerning the hours of covered work of Defendants' truck drivers.

168.     Particular facts demonstrating the creation and the operation of ACS, Time Square and HDK as alter egos of Navillus are exclusively within the Defendants' knowledge.

169.     Defendants acted in an intentional and reckless manner, consciously disregarded the Plaintiffs' rights, and showed wanton dishonesty and disregard of their obligations to the Funds. The fraudulent acts committed by Defendants exhibit a high level of moral culpability aimed at the public.

170.    Defendants Donal O'Sullivan, Kevin O' Sullivan, Helen O'Sullivan, are jointly and severally liable with Navillus for any contributions due and owing pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, based on their knowing participation in a scheme to underpay Defendant Companies' contributions to the Funds, plus interest, liquidated damages, attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs' respectfully request the Court enter judgment:

1.    Declaring Navillus, Time Square and HDK to be alter-egos, single employers and/or double breasted enterprises with each other;

2.    Declaring Navillus, ACS, Time Square and HDK jointly and severally liable for unpaid benefit contributions and statutory and contractual damages owed to the Funds for each hour of work covered by a collective bargaining agreement between Navillus and the Union performed by employees, including but not limited to drivers operating hired trucks to perform trucking and hauling services, on behalf of Navillus, ACS, Time Square and HDK.

3.    Declaring Donal O'Sullivan, Kevin O' Sullivan, Helen O'Sullivan, Navillus, ACS, Time Square and HDK engaged in a scheme to defraud the Funds of employee benefit contributions;

4.    Entering Judgment in favor of Plaintiffs against Defendants, jointly and severally, for injunctive relief ordering Defendants to pay all unpaid delinquencies owed to Plaintiffs Funds in an amount to be determined at trial, together with statutory and contractual interest, liquidated damages, and reasonable attorneys' fees and costs, including the costs of collecting the delinquency, as set forth under Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) and Trust Agreement, Article VI, Section 3, and requiring Defendants to accurately report work covered by

a collective bargaining agreement between International Brotherhood of Teamsters Local 282 and Defendants  and remain current in contributions to the Funds;

5.      Awarding Plaintiffs their reasonable attorneys' fees, disbursements and costs in collecting the delinquencies and in prosecution of this action, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and Article IX, Section 3 of the Trust Agreement; and

6.      Ordering such other legal and/or equitable relief as the Court deems proper.


Dated: October 27, 2015
       White Plains, New York



                              TRIVELLA & FORTE, LLP

                              s/ *Jonathan Bardavid*
                              _____

                              By: Jonathan M. Bardavid *(JB 0072)*
                              *Attorneys for the Plaintiffs*
                              1311 Mamaroneck Avenue, Suite 170
                              White Plains, New York 10605
                              Telephone: (914) 949-9075