**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THOMAS GESUALDI, et al.,** | **15-cv-8441 (LS)** |
| **Plaintiff(s),** | **ECF Case** |
| **v.** | **DEFENDANT NAVILLUS TILE, INC.,** |
| **NAVILLUS TILE, INC., et al.** | **DONAL O'SULLIVAN, AND HELEN** |
| **Defendant(s).** | **O'SULLIVAN'S AMENDED ANSWER AND DEFENSES TO COMPLAINT** |

Defendants Navillus Tile, Inc. ("Navillus"), Donal O'Sullivan, and Helen O'Sullivan (collectively, "Defendants"), by and through their attorneys, Jones Day, hereby answer the Complaint ("Complaint"), filed by purported Trustees of various benefit funds ("Plaintiffs"), as follows:

<u>**FIRST UNNUMBERED PARAGRAPH OF COMPLAINT**</u>

Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in the first unnumbered paragraph of the Complaint.

<u>**INTRODUCTION**</u>

Defendants admit that Plaintiffs purport to bring this action under the Employee Retirement Income Security Act ("ERISA") and under § 301 of the Labor Management Relations Act ("LMRA") and deny each and every other allegation and legal conclusion set forth in the introduction.

<u>**JURISDICTION AND VENUE**</u>

1.      Defendants admit that this Court has jurisdiction over Plaintiffs' action under ERISA, 29 U.S.C. § 1001 et seq.

2.      Defendants admit that this Court has jurisdiction over Plaintiffs' action under the LMRA and deny each and every other allegation set forth in paragraph 2.

3.      Defendants admit that venue in this matter is proper in this Court and deny each and every other allegation set forth in paragraph 3.

## THE PARTIES

4.      Defendants state that each and every allegation set forth in paragraph 4 constitutes a legal determination that is not subject to admission or denial.

5.      Defendants state that the allegations set forth in paragraph 5 constitute  legal determinations that are not subject to admission or denial.  To the extent the allegations do not constitute legal determinations, Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 5.

6.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 6.

7.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 7.

8.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 8.

9.      Defendants state that the allegations set forth in paragraph 9 constitute  legal determinations that are not subject to admission or denial.  To the extent the allegations do not constitute legal determinations, Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 9.

10.      Defendants admit the allegations set forth in paragraph 10.

11.      Defendants deny each and every allegation set forth in paragraph 11.

12.      Defendants admit that Navillus is a company that engages in concrete construction work within the State of New York and denies knowledge or information sufficient

to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 12.

13.     Defendants state that each and every allegation set forth in paragraph 13 constitutes a legal determination that is not subject to admission or denial.

14.     Defendants admit that Donal O'Sullivan is the owner of Navillus and deny each and every other allegation set forth in paragraph 14.

15.     Defendants deny each and every allegation set forth in paragraph 15.

16.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 16.

17.     Defendants deny each and every allegation set forth in paragraph 17.

18.     Defendants admit that Kathleen O'Sullivan owns an apartment located at 314 East 41st Street, New York, NY 10017 and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 18.

19.     Defendants admit that Kathleen O'Sullivan is the wife of Donal O'Sullivan.

20.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 20.

21.     Defendants deny each and every allegation set forth in paragraph 21.

22.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 22.

23.     Defendants state that each and every allegation set forth in paragraph 23 constitutes a legal determination that is not subject to admission or denial.

24.     Defendants admit that Time Square Construction, Inc. ("Time Square") maintains an office at 355 Lexington Avenue, New York, New York 10017 and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 24.

25.     Defendants admit that Kevin O'Sullivan is the owner of Time Square and deny that Donal O'Sullivan or Helen O'Sullivan are owners of Time Square.  Defendants deny each and every other allegation set forth in paragraph 25.

26.     Defendants admit that Kevin O'Sullivan is the managing member of Time Square responsible for making management decisions and deny that Donal O'Sullivan is a managing member of Time Square or responsible for making management decisions for Time Square. Defendants deny each and every other allegation set forth in paragraph 26.

27.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 27.

28.     Defendants state that each and every allegation set forth in paragraph 28 constitutes a legal determination that is not subject to admission or denial.

29.     Defendants admit that HDK Construction, LLC ("HDK") maintains an office at 355 Lexington Avenue, New York, New York 10017 and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 29.

30.     Defendants admit that Kevin O'Sullivan is the owner of HDK and deny that Donal O'Sullivan or Helen O'Sullivan are owners of HDK.  Defendants deny each and every other allegation set forth in paragraph 30.

31.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 31.

32.     Defendants state that each and every allegation set forth in paragraph 32 constitutes a legal determination that is not subject to admission or denial.

## **FACTUAL BASIS FOR CLAIMS**

**A.      The Collective Bargaining Agreements, the Trust Agreement, and the Obligation to Contribute to the Funds.**

33.     Defendants admit that Navillus is a member of the Building Contractors Association, Inc. ("BCA") who it has designated as a collective bargaining representative and that the BCA is party to Collective Bargaining Agreements ("CBAs") with Teamsters Local 282 ("Local 282") for the periods July 1, 2008 to June 30, 2013 and July 1, 2013 to June 30, 2016 ("BCA CBAs").  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 33.

34.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves and deny each and every other allegation set forth in paragraph 34.

35.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves and deny each and every other allegation set forth in paragraph 35.

36.     To the extent Plaintiffs purport to summarize or quote from the Trust Agreement, Defendants state that the Agreement speaks for itself.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 36.

37.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs and/or the Trust Agreement, Defendants state that the BCA CBAs and Agreement speaks for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 37.

38.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs and/or the Trust Agreement, Defendants state that the BCA CBAs and Agreement speaks for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 38.

39.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs and/or the Trust Agreement, Defendants state that the BCA CBAs and Agreement speaks for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 39.

40.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs and/or the Trust Agreement, Defendants state that the BCA CBAs and Agreement speaks for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 40.

41.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 41.

42.    To the extent Plaintiffs purport to summarize or quote from the Trust Agreement, Defendants state that the Agreement speaks for itself.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 42.

**B.    Contractual Obligations With Respect To Hired Trucks**

43.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 43.

44.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 44.

45.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 45.

46.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 46.

47.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 47.

48.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 48.

49.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 49.

50.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny each and every other allegation set forth in paragraph 50.

**C.     Projects Engaged in by Defendants**

51.     Defendants deny each and every allegation set forth in paragraph 51.

52.     Defendants admit that Navillus, ACS, Time Square, and HDK work in the construction industry, broadly defined, and deny each and every other allegation set forth in paragraph 52.

53.     Defendants admit that Navillus employs carpenters, lathers, concrete laborers and truck drivers when it engages in concrete construction projects and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 53.

54.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 54.

55.     Defendants deny each and every allegation set forth in paragraph 55.

56.     Defendants admit that Navillus has worked on projects at the World Trade Center, 1717 Broadway, 150 Charles Street, 400 5th Avenue, 309 5th Avenue, 35 W. 21st Street, and 785 8th Avenue and deny each and every other allegation set forth in paragraph 56.

57.     Based on information and belief, Defendants believe that ACS has worked on projects at 555 W. 21st Street, 1191 Boston Road, One DeKalb Avenue, 205 E. 92nd Street, 421 Kent Avenue, 111 W. 57th Street, 20 East End Avenue, 180 Myrtle Avenue, and 68 Charlton Street.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 57.

58.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 58.

59.     Defendants deny that HDK ever facilitated payroll services for Navillus and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 59.

60.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 60.

61.     Defendants deny that Navillus guaranteed any ACS work and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other  allegation set forth in paragraph 61.

62.     Defendants admit that Navillus uses Construction Risk Partners as a broker for construction bonds and based on information and belief, believe that ACS and Time Square use

Construction Risk Partners as a broker for construction bonds.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 62.

**D.     The Relationship Between All Defendant Companies**

63.     Defendants deny each and every allegation set forth in paragraph 63.

64.     Defendants admit that Navillus, ACS, and Time Square work in the construction industry, broadly defined, and deny each and every other allegation set forth in paragraph 64.

65.     To the extent Plaintiffs purport to summarize or quote from the BCA CBAs with Local 282, Defendants state that the Contracts speak for themselves and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 65.

66.     Defendants deny each and every allegation set forth in paragraph 66.

67.     Defendants deny each and every allegation set forth in paragraph 67.

68.     Defendants deny each and every allegation set forth in paragraph 68.

69.     Defendants deny each and every allegation set forth in paragraph 69.

70.     Defendants deny each and every allegation set forth in paragraph 70.

71.     Defendants deny each and every allegation set forth in paragraph 71.

72.     Defendants deny each and every allegation set forth in paragraph 72.

73.     Defendants deny each and every allegation set forth in paragraph 73.

74.     Defendants deny each and every allegation set forth in paragraph 74.

75.     Defendants deny each and every allegation set forth in paragraph 75.

76.     Defendants deny each and every allegation set forth in paragraph 76.

77.     Defendants deny each and every allegation set forth in paragraph 77.

78.     Defendants deny each and every allegation set forth in paragraph 78.

79.     Defendants deny each and every allegation set forth in paragraph 79.

80.     Defendants deny each and every allegation set forth in paragraph 80.

81.     Defendants deny each and every allegation set forth in paragraph 81.

82.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 82.

83.     Defendants deny each and every allegation set forth in paragraph 83.

84.     Defendants deny each and every allegation set forth in paragraph 84.

85.     Defendants deny each and every allegation set forth in paragraph 85.

86.     Defendants deny each and every allegation set forth in paragraph 86.

87.     Defendants deny each and every allegation set forth in paragraph 87.

88.     Defendants deny each and every allegation set forth in paragraph 88.

**E.      The Specific Relationship Between Navillus and ACS**

89.     Defendants deny each and every allegation set forth in paragraph 89.

90.     Defendants deny each and every allegation set forth in paragraph 90.

91.     Defendants admit that 26-01 First Street, Queens, NY and 27-02 First Street, Queens, NY are approximately 100 yards from each other and deny each and every other allegation set forth in paragraph 91.

92.     Defendants deny each and every allegation set forth in paragraph 92.

93.     Defendants admit that Donal O'Sullivan personally lent Eoin Moriarty $1,800,000 at above-market interest rates pursuant to three separate promissory notes and that Eoin Moriarty has repaid all three loans plus interest.  Defendants deny each and every other allegation set forth in paragraph 93.

94.     Defendants deny each and every allegation set forth in paragraph 94.

95.     Defendants deny that Eoin Moriarty was the controller at Navillus for six years and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 95.

96.     To the extent Plaintiffs purport to summarize or quote from reports to the New York City Housing Preservation Development agency, Defendants state that the reports speak for themselves.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 96.

97.     Based on information and belief, Defendants believe that Eoin Moriarty asked Peter Downes to become a founding member of ACS in the summer of 2013 in order to obtain more reasonable insurance rates but that Peter Downes had little involvement in ACS' business or operations before selling his interest in ACS in the fall of 2013.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 97.

98.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation in paragraph 98.

99.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 99.

100.     Defendants admit that Patrick Corcoran, John Kuefner, Hazelyn Corcoran, and John Brennan were, at some point, previously employed by Navillus and deny each and every other allegation set forth in paragraph 100.

101.     To the extent that Plaintiffs purport to summarize or quote from correspondence with the NYCDOB, Defendants state that the correspondence speaks for itself.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 101.

102.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 102.

103.     Defendants deny each and every allegation set forth in paragraph 103.

104.     Defendants admit that David Ashe was, at some point, previously employed by Navillus and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 104.

105.     Defendants admit that Ian Rubenstein, David Dragone, Ezequiel Arias, Vincent Cienfuegos, Fabian Haredia, Tashi Tsering, and Leandro Andrade (none of whom are members of Local 282) were, at some point, previously employed by Navillus and deny each and every other allegation set forth in paragraph 105.

106.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 106.

107.     Defendants deny each and every allegation set forth in paragraph 107.

108.     Based on information and belief, Defendants believe that ACS borrowed some Navillus concrete forms without permission on one occasion.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 108.

109.     Defendants deny each and every allegation set forth in paragraph 109.

110.     Defendants deny each and every allegation set forth in paragraph 110.

**F.     The Relationship Between Time Square and HDK**

111.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 111.

112.     Defendants admit that Time Square and HDK have offices at 355 Lexington Avenue and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 112.

113.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 113.

114.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 114.

115.    Defendants deny that Donal O'Sullivan or Helen O'Sullivan made management decisions for Time Square or HDK and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 115.

116.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 116.

**G.    Relationship Between Navillus, HDK and Time Square**

117.    Defendants deny each and every allegation set forth in paragraph 117.

118.    Defendants admit that Donal O'Sullivan made management decisions for Navillus and deny each and every other allegation set forth in paragraph 118.

119.    Defendants deny each and every allegation set forth in paragraph 119.

120.    To the extent Plaintiffs purport to summarize or quote from correspondence related to the 400 W. 155th Street project, Defendants state that the correspondence speaks for itself.  Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 120.

121.    Defendants deny each and every allegation set forth in paragraph 121.

122.    To the extent Plaintiffs purport to summarize or quote from a disclosure statement filed by an unrelated corporation that has no relevancy to the Complaint, Defendants state that the disclosure statement speaks for itself.

123.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 123.

124.    Defendants deny each and every allegation set forth in paragraph 124.

125.    Defendants admit that a 2000 Mitsubishi Galant, Vehicle Identification Number 4A3AA46GXYE160671, license plate number EDG8674, was registered to Navillus in 2008 and

deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 125.

126.    Defendants admit that a truck, Vehicle Identification Number 1GPD7H113TJ503709, license plate number 18613MA, is registered to Navillus and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 126.

127.    Defendants admit that Navillus sometimes marks its equipment and rental equipment with identifiers "NAV", "NA", or "NAVILLUS" and deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every other allegation set forth in paragraph 127.

128.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 128.

129.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 129.

130.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 130.

131.    Defendants admit that Navillus and Time Square had separate construction yards at 29-01 Review Avenue at some time in the past and deny each and every other allegation set forth in paragraph 131.

132.    Defendants deny each and every allegation set forth in paragraph 132.

133.    Defendants deny each and every allegation set forth in paragraph 133.

134.    Defendants admit the allegations set forth in paragraph 134.

135.    Defendants state that each and every allegation set forth in paragraph 135 constitutes a legal determination that is not subject to admission or denial.

136.    Defendants deny each and every allegation set forth in paragraph 136.

137.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation set forth in paragraph 137.

138.    Defendants deny each and every allegation set forth in paragraph 138.

139.    Defendants deny each and every allegation set forth in paragraph 139.

140.    Defendants deny each and every allegation set forth in paragraph 140.

141.    Defendants deny each and every allegation set forth in paragraph 141.

142.    Defendants deny each and every allegation set forth in paragraph 142.

**H.    Other Amounts**

143.    Defendants deny each and every allegation set forth in paragraph 143.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

144.    Defendants hereby incorporate by reference and restate their responses to the allegations set forth in paragraphs 1-143 as if fully set forth herein.

145.    Defendants state that the allegations in paragraph 145 require no response inasmuch as they merely purport to partially paraphrase Section 515 of ERISA.

146.    Defendants state that the allegations in paragraph 146 require no response inasmuch as they merely purport to partially paraphrase Section 502(a)(3) of ERISA.

147.    Defendants state that the allegations in paragraph 147 require no response inasmuch as they merely purport to partially paraphrase Section 502(g)(2) of ERISA.

148.    Defendants deny each and every allegation set forth in paragraph 148.

149.    Defendants deny each and every allegation set forth in paragraph 149.

150.    Defendants deny each and every allegation set forth in paragraph 150.

151.    Defendants deny each and every allegation set forth in paragraph 151.

152.    Defendants deny each and every allegation set forth in paragraph 152.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>

153.    Defendants hereby incorporate by reference and restate their responses to the allegations set forth in paragraphs 1-152 as if fully set forth herein.

154.    Defendants state that the allegations in paragraph 154 require no response inasmuch as they merely purport to partially paraphrase Section 301(a) of the LMRA.

155.    Defendants state that the allegations in paragraph 155 require no response inasmuch as they merely purport to partially paraphrase Section 301(b) of the LMRA.

156.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs, Defendants state that the BCA CBAs speak for themselves.

157.    To the extent Plaintiffs purport to summarize or quote from the BCA CBAs, Defendants state that the BCA CBAs speak for themselves.

158.    Defendants deny each and every allegation set forth in paragraph 158.

159.    Defendants deny each and every allegation set forth in paragraph 159.

160.    Defendants deny each and every allegation set forth in paragraph 160.

## AS AND FOR A THIRD CAUSE OF ACTION

161.    Defendants hereby incorporate by reference and restate their responses to the allegations set forth in paragraphs 1-160 as if fully set forth herein.

162.    Defendants deny each and every allegation set forth in paragraph 162.

163.    Defendants admit that Donal, Kevin, and Helen O'Sullivan are siblings.

164.    Defendants deny each and every allegation set forth in paragraph 164.

165.    Defendants deny each and every allegation set forth in paragraph 165.

166.    Defendants deny each and every allegation set forth in paragraph 166.

167.    Defendants deny each and every allegation set forth in paragraph 167.

168.    Defendants deny each and every allegation set forth in paragraph 168.

169.    Defendants deny each and every allegation set forth in paragraph 169.

170.    Defendants deny each and every allegation set forth in paragraph 170.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief whatsoever, and deny each and every allegation set forth in each and every subsection and each and every numbered paragraph of the Wherefore clause.

## AFFIRMATIVE AND OTHER DEFENSES

## FIRST AFFIRMATIVE DEFENSE

171.    Plaintiffs' claims are barred, in whole or in part, because the Complaint unlawfully seeks to bind non-signatories to collective bargaining agreements and require contributions to Union benefit funds for hours worked by nonunion employees where those employees are not eligible for such benefits.

## SECOND AFFIRMATIVE DEFENSE

172.    Inasmuch as the relevant facts have remained the same since this Court held that Navillus and Time Square were not alter egos in *Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater New York & Long Island*, Case No. 07-cv-7250 (SAS), 2008 WL 55116 (S.D.N.Y.  Jan. 2, 2008), Plaintiffs' claims are barred, in whole or in part, by the doctrine of collateral estoppel.  (Annexed as Exhibit A, and incorporated herein by reference, is a true and correct copy of Judge Scheindlin's decision in *Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater New York & Long Island*, Case No. 07-cv-7250 (SAS), 2008 WL 55116 (S.D.N.Y.  Jan. 2, 2008).)

## THIRD AFFIRMATIVE DEFENSE

173.    Plaintiffs' fraud claims are barred, in whole or in part, because they are preempted by ERISA and Plaintiffs have failed to state a cause of action upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

174.    Plaintiffs' claims alleging that Defendants violated collective bargaining agreements are barred, in whole or in part, because they are preempted by the LMRA, and in any event, they are entitled to no relief under the collective bargaining agreements.

### FIFTH AFFIRMATIVE DEFENSE

175.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### SIXTH AFFIRMATIVE DEFENSE

176.    Plaintiffs' claims are barred, in whole or in part, because they are not authorized to bring this action.

Defendants reserve the right to amend their Answer and to assert additional defenses and/or supplement, alter or change this Answer during and/or upon the completion of further discovery and investigation.

WHEREFORE, the Defendants, having fully answered the Complaint, demand: (1) the Complaint be dismissed as against the Defendants in its entirety and with prejudice; (2) the Defendants be awarded their costs, disbursements and reasonable attorneys' fees against the Plaintiffs; and (3) such other and further relief as the Court deems just and proper.


Dated:  January 20, 2016                    Respectfully submitted,


                                            *s/ Willis J. Goldsmith*
                                            Willis J. Goldsmith
                                            Joshua M. Grossman
                                            JONES DAY
                                            222 East 41st Street
                                            New York, New York 10017
                                            Tel: 212.326.3939
                                            Fax: 212.755.7306
                                            wgoldsmith@jonesday.com
                                            jgrossman@jonesday.com

**CERTIFICATE OF SERVICE**

I, Willis J. Goldsmith, certify that on January 20, 2016, I caused the foregoing Amended Answer to be filed with the Clerk of the Court, served upon all counsel of record via the CM/ECF system.


 *s/ Willis J. Goldsmith*
Willis J. Goldsmith

# EXHIBIT A

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...
Case 1:15-cv-08441-CM Document 47 Filed 01/20/16 Page 21 of 28
183 L.R.R.M. (BNA) 2692

2008 WL 55116
United States District Court,
S.D. New York.

TIME SQUARE CONSTRUCTION, INC., Plaintiff,
v.
MASON TENDERS DISTRICT COUNCIL
OF GREATER NEW YORK & LONG
ISLAND and Construction General Laborers
JATC, Local Union No. 79, Defendants.

No. 07 Civ. 7250(SAS).  |  Jan. 2, 2008.

**Attorneys and Law Firms**

Joel Emmet Cohen, Esq., Leila Rachele Pittaway, Esq., McDermott, Will & Emery, LLP, New York, NY, for Plaintiff.

Lowell George Peterson, Esq., Meyer, Suozzi, English & Klein, P.C ., New York, NY, for Defendants.

### *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

 **\*1** Defendant Mason Tenders District Council of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 (the "Union") have served a notice to arbitrate on Navillus Tile, Inc. ("Navillus"), an entity not named in this litigation, as well as plaintiff Time Square Construction, Inc. ("Time Square"). Time Square now moves to enjoin defendants from compelling it to arbitrate. For the reasons stated below, this motion is granted.

## II. BACKGROUND [1]

### A. Time Square Corp. and Navillus Tile, Inc.

Navillus is a corporation that performs various types of masonry and structural construction work. [2] It employs approximately 7800 people. [3] Although Navillus generally operates as a subcontractor, it occasionally acts as a general contractor for sites where a majority of the work involves masonry and tiling. [4] Navillus has been in operation since 1987. [5] The company is owned by brothers Kevin and Donal

O'Sullivan. [6] For some time, Kevin was Vice President of Navillus. [7]

Around 2004 or 2005, Kevin decided to launch a new business venture as a general contractor that would build properties. [8] The brothers and two co-owners purchased a property on 48th Street and 8th Avenue (the "Project") and formed Time Square. [9] Kevin, who resigned from Navillus, [10] became President of Time Square, and the company is owned by the two brothers. [11] Kevin is and has always been the only officer of Time Square. [12] Although Donal shares in the profits of Time Square, he is not an officer or director of the company and he has minimal involvement in its operations. [13]

Originally, Time Square rented space in Navillus's offices in Long Island City. [14] Around February 2006, it was incorporated as a New York corporation [15] and signed a ten-year lease on office space in Manhattan, which it occupied in October 2006. [16] Several employees of Navillus, including Project Manager Fergal Confrey, Anthony Del Greco, and Thea Clark moved to Time Square's payroll in 2006, and Project Superintendent Lenny Kelly transferred to Time Square in 2007. [17] Navillus and Time Square have separate bank accounts, financial statements, insurance policies, and payroll. [18]

Although Donal is not a director or officer of Navillus, he has, on occasion, signed documents on behalf of Navillus. Kevin states that this has occurred only when he is inaccessible and time is of the essence. [19]

### B. The 48th Street Project

Time Square is the general contractor of the 48th Street Project (the "Project"), which involves construction of a forty-three-story condominium. [20] As general contractor, Time Square hires subcontractors to perform various jobs. For example, the first subcontractor hired was Russo Wrecking, which demolished the existing structure on the property. [21] Several unions, including defendants, provide workers for the site. [22]

The concrete superstructure and masonry work on the Project was subcontracted to Navillus. [23] Navillus was hired because

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...
Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 22 of 28
183 L.R.R.M. (BNA) 2692

Time Square did not possess a complete set of construction documents and was therefore required to place substantial trust in its superstructure contractor. [24]

**\*2** Time Square also has another project, a thirty-six story condominium on 34th Street, on which Navillus is also a subcontractor. [25] Navillus obtained that role through a competitive bidding process. [26]

At the Project site, Time Square employs a project manager, a superintendent, and a site safety manager. [27] The other workers are employed by the subcontractors. For example, Kew Electric, the company subcontracted to perform electrical work, has on site electricians, a project manager, and a foreman. [28]

At the Project site, Navillus has a superintendent, a project manager, carpenters, concrete finishers, and other related workers. [29] As a subcontractor, Navillus is entirely responsible for personnel decisions, including whom to hire and fire, how work should be assigned, and other personnel decisions. [30]

Navillus is a member of the Building Contractors Association, a bargaining association that has a collective bargaining agreement (the "CBA") with defendants. [31] Navillus is thus a party to the CBA. [32] Time Square is not a member of any such association and is not a party to the CBA.

### C. Hiring of Nicholas Albanese

In May 2007, representatives of the Union approached Navillus and Time Square to request that Union workers be employed at the Project . [33] Although Time Square had no need of union workers, because Navillus's relationship with the Union was valuable and Time Square wanted Navillus to avoid potential labor issues, Time Square agreed to hire a Union worker. [34] Nicholas Albanese was sent to the Project to be shop steward. [35]

Although Time Square agreed to hire a Union worker to assist with clean-up, it required that the employee have a site safety license. [36] Construction on such a site in Manhattan cannot proceed unless an employee with a site safety license is on site at all times, and licensed employees are difficult to find. [37]

Time Square hoped to find a licensed employee with whom it could forge a permanent relationship. [38]

Albanese was paid by Time Square through Navillus pursuant to a paymaster agreement, [39] but did not otherwise play a role in Albanese's employment. [40] Under the CBA, a company that served as a paymaster agreed that it and the company for which it serves are "joint employers and one another's agents for all work performed at the site. The companies in the paymaster relationship shall be jointly and severally liable for all violations of this Agreement committed by either ...." [41]

The relationship between Albanese and Time Square soured. To avoid getting caught in the middle of the dispute and thus damaging its relationship with the Union, Navillus asked to be relieved of its role as paymaster. Time Square then arranged for Par Wrecking to take over as paymaster. [42] Disputes between Albanese and Time Square continued, and Albanese's relationship with Time Square was terminated.

### D. Procedural Posture

**\*3** Defendants filed a grievance against Navillus asserting that Albanese was owed thirteen hours of overtime and that various other violations of the CBA occurred, and that Navillus was responsible as paymaster pursuant to the CBA. [43] When the grievance was unsuccessful, defendants began an arbitration proceeding pursuant to the CBA. However, defendants named both Time Square and Navillus as defendants in the arbitration proceeding. [44] Although Time Square is not a signatory to the CBA, defendants claim that Time Square is an alter ego of Navillus, and that Time Square is therefore required to arbitrate the dispute. Time Square now asks this Court to enjoin defendants from compelling Time Square to arbitrate on the ground that it is not bound by the CBA.

### III. APPLICABLE LAW

### A. Preliminary Injunction

Although the decision whether to grant a preliminary injunction lies squarely within the court's discretion, "a preliminary injunction is an extraordinary measure that should not be routinely granted." [45] In order to obtain a preliminary injunction, a plaintiff must ordinarily demonstrate: (1) the possibility of irreparable harm; and (2) either (a) a likelihood of success on the merits, or (b) a

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...

Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 23 of 28

183 L.R.R.M. (BNA) 2692

sufficiently serious question going to the merits combined with a balance of hardships tipping decidedly in favor of the moving party. [46] Irreparable harm is "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." [47]

## B. Collective Bargaining and Double-Breasted Companies

A construction site is typically managed by a general contractor, which hires subcontractors to perform tasks such as plumbing, masonry, and electricity. Some general contractors hire only subcontractors that employ union workers, while other contractors are willing to hire subcontractors that employ nonunion workers. Because nonunion workers generally receive lower wages and benefits, employers seek to use them when possible. Subcontractors at times create "double-breasted" operations, in which a "unionized employer ... creates an ostensibly separate firm with a nonunion workforce." [48] The subcontractor then uses its nonunion company when possible and its union company only when necessary. [49] A double-breasted operation is not *per se* illegal, but the nonunion company "may be held liable for debts and other obligations of [the other], and in some cases may be bound to the collective bargaining agreement of the other entity." [50]

While courts must be vigilant to prevent companies from evading their responsibilities to unions by reincorporating, some unions have taken advantage of this vigilance to obtain the unionization of the workforce without utilizing the standard procedures. The Second Circuit has "consistently guarded against attempts by unions to gain representation of separate bargaining units through methods other than elections." [51] Thus, in situations (such as this one) where a union asserts that owners of a company are attempting to evade a collective bargaining agreement by creating a new entity, the court must determine whether the new entity represents an evasion of a company's bargaining responsibilities to the union, or if the union's claim is an attempt to organize workers in the new entity without elections.

**\*4** This inquiry focuses on the relationship between the old and new companies. There are three doctrines that may apply to the companies-alter ego, single employer, and joint employer.

### 1. Alter Ego / Veil Piercing

"In some instances, the corporate relationship between a parent and its subsidiary [is] sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other." [52] Courts pierce the corporate veil "to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." [53] Veil piercing determinations are fact-specific and are highly sensitive to "the circumstances of each case." [54] "[A] parent corporation and its subsidiary lose their distinct corporate identities when their conduct demonstrates a virtual abandonment of separateness." [55] Veil piercing in the contract context is infrequent because the party seeking relief "is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form." [56]

Factors that are relevant to determining whether a corporation's form should be respected include:

"(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities." [57]

### 2. Single Employer Doctrine

The single employer doctrine permits two entities to be treated as a single employer "to determine liability for unfair labor practices, to determine whether or not union picketing is directed at a neutral 'secondary employer,' to determine whether a union may seek to represent the employees of two enterprises in a single bargaining unit, and to determine whether an employer employs enough workers to satisfy NLRA jurisdictional limits." [58] Thus, where the doctrine applies, an employee "may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." [59] This doctrine is a labor law

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...
183 L.R.R.M. (BNA) 2692

Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 24 of 28

concept, and is conceptually distinct from the contract and agency principle of alter ego. [60]

To determine whether two entities are a single employer, courts look to " 'interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.' " [61] The second factor is the most significant. [62] "Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises." [63]

**\*5** If a company is found to be a single employer with an entity that has signed a CBA, the company can in some circumstances be bound to that CBA. But "the determination that separate companies are a 'single employer' is not enough to bind all the separate companies to the collective bargaining agreements of any one of the companies." [64] "As a matter of law ... it is against public policy to bind a non-signatory company where the employees of both companies do not constitute a single collective bargaining unit ." [65] Thus, "to bind a non-signatory company to a collective bargaining agreement, both single employer and single bargaining unit status must be found." [66] "To achieve the goal of creating a viable bargaining unit, factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange will be examined." [67]

**3. Joint Employer Doctrine**
To determine if two companies are joint employers, the goal is to determine if the alleged second employer "possessed the power to control the workers in question." [68] "A joint employer relationship may be found to exist where there is sufficient evidence that [one company has] immediate control over the other company's employees. Relevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision ." [69] In the context of the Fair Labor Standards Act, the Second Circuit has cautioned that district courts must "look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer ...." [70] The test must be flexible, based on " 'the circumstances of the whole activity,' " and should consider any factors "relevant to ... the economic realities." [71]

Where this doctrine applies, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer ...." [72] As with the doctrine of single employers, a non-signatory to a CBA cannot be bound to that CBA absent a finding that the employees of the two companies constitute a single bargaining unit. [73]

A conclusion that two employers are joint employers is different from the conclusion that they are single employers. Single employers are actually "part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.' " [74] Joint employers are separate companies that have "have merely chosen to handle certain aspects of their employer-employee relationships jointly." [75]

**IV. DISCUSSION**
The evidence in this case strongly suggests that the instant dispute has been manufactured to obtain a favorable ruling from this Court. Defendants assert that if they "went ahead with the arbitration against Navillus, an arbitrator could rule that the CBA was violated and could direct that Albanese be paid. Navillus would be liable, although it might seek reimbursement from Time Square." [76] This would resolve the underlying grievance. Defendants have instead chosen to proceed against Time Square, presumably to bind it to a collective bargaining agreement. Although the amount in controversy in this case is minimal compared to the cost of litigation, Time Square is not pursuing a settlement, again presumably because it seeks a ruling that the CBA does not apply to Time Square. Nevertheless, because there is a real dispute, however *de minimis* it may appear, the parties have a right to an adjudication.

**A. Possibility of Irreparable Harm**
**\*6** Time Square contends that it would suffer irreparable harm if forced to arbitrate despite the lack of a valid arbitration agreement. [77] Defendants do not contest this position, and so implicitly concede that irreparable harm will occur if Time Square's arguments are accepted. [78]

**B. Veil Piercing**

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...
Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 25 of 28
183 L.R.R.M. (BNA) 2692

Defendants argue that Time Square is an alter ego of Navillus and so is bound by the CBA.[79] I disagree. Albanese was hired no earlier than May 2007.[80] At that time, the undisputed evidence demonstrates that Time Square had a formal corporate existence, sufficient capitalization, and office space, and freedom to act independent of Navillus. Time Square and Navillus have generally made proper use of the formalities of corporate existence.[81] Other factors indicate that the two companies are not alter egos. While Time Square concedes that it hired several employees from Navillus, there is no evidence to contradict Time Square's claim that those employees left Navillus when they moved to Time Square. The companies do not share officers,[82] Navillus did not guarantee Time Square's debts, and the two companies did not intermingle their property.[83]

Further, the evidence indicates that Time Square was incorporated for a purpose somewhat different from that of Navillus-while Navillus primarily engages in masonry and tile work, Time Square appears to have broader development goals. Time Square was intended to act as a general contractor and a developer. Uncontradicted evidence indicates that Navillus has acted as a general contractor only on public renovation sites where the masonry and tile work was a majority of the overall project.[84] Time Square is thus an independent profit center from Navillus.

Certain factors, such as the overlap in ownership and the lack of arms-length interaction between the companies, do weigh in favor of a finding that the corporations are alter egos.[85] However, these factors are not sufficient to outweigh the bulk of the evidence.

Not surprisingly for companies that are run by siblings, Time Square and Navillus have a closer relationship than is normal for unrelated companies in the construction industry. Nevertheless, based on the totality of the circumstances, as of May 2007, the corporations are not so intertwined that they can be considered alter egos.

### C. Single Employer
Defendants also claim that Time Square and Navillus are "single employers" and so Time Square is subject to the CBA

Footnotes

signed by Navillus.[86] As of May 2007, Time Square and Navillus have separate management and operations-which weighs against a finding that they are a single employer-but have common ownership-which weighs in favor of that finding. However, the most significant factor, centralized control of labor relations, is not present. There is no convincing evidence that Navillus played any role in Time Square's employment decisions.[87] Weighing these factors, I conclude that Time Square and Navillus are not single employers.

### D. Joint Employer
**\*7** Defendants claim that Time Square and Navillus are "joint employers" and so Time Square is subject to the CBA signed by Navillus.[88] The weight of the evidence strongly favors a conclusion that Navillus had no control over Albanese or Time Square's other employees.[89] As with the single employer analysis, the finding that Navillus had no control over Time Square's employees is very significant. Based on the circumstances of the whole activity, it is clear that Albanese was employed solely by Time Square.

Navillus's status as paymaster does not change this finding. While the CBA states that Navillus concedes that it is a joint employer with any company for which it operates as paymaster, this provision is not binding on Time Square.[90] If making use of a paymaster arrangement caused Time Square to become subject to the CBA, there would be no need for the paymaster arrangement-once subject to the CBA, Time Square would be a union company. It defies common sense to suggest that this is what the parties intended.[91]

### V. CONCLUSION
For the reasons stated above, plaintiff's motion for a preliminary injunction is granted. The Clerk of the Court is directed to close this motion (document no. 4 on the docket sheet).

SO ORDERED.

### Parallel Citations

183 L.R.R.M. (BNA) 2692

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...

Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 26 of 28

183 L.R.R.M. (BNA) 2692

1    Except where indicated, the facts in this section are either stipulated to by the parties, or are the Court's conclusions based on uncontradicted evidence.

2    *See* 11/26/07 Testimony of Kevin O'Sullivan ("O'Sullivan Tr ."), at 36.

3    *See id.*

4    *See id.*

5    *See* Deposition of Donal O'Sullivan at 5, Ex. B to Declaration of Joel E. Cohen ("Cohen Decl").

6    *See* O'Sullivan Tr. at 37.

7    *See id.*

8    *See id.* at 37-39.

9    *See id.* at 39.

10   *See* Minutes of the Meeting of the Board of Directors of Navillus Tile, Inc., Ex. G to Cohen Decl. (accepting Kevin's resignation from the positions of Executive Vice President, Secretary, and Treasurer).

11   *See* O'Sullivan Tr. at 35, 41, 43.

12   *See* Deposition of Kevin O'Sullivan at 5, Ex. C to Cohen Decl.

13   *See* O'Sullivan Tr. at 43.

14   *See id.* at 39; Invoices for Rent, Rent Checks, and Lease Summary, Ex. F to Cohen Decl.

15   It was later reincorporated in Delaware. *See* O'Sullivan Tr. at 40; Certificate of Incorporation, Ex. D to Cohen Decl.

16   *See* O'Sullivan Tr. at 40-41.

17   *See* Summary of Evidence ("Summ.") ¶¶ 20-23; O'Sullivan Tr. at 41-42. Although the Summary of Evidence was prepared only by defendants, at oral argument plaintiff indicated which items were not contested. *See* Tr. at 2-30.

18   *See* O'Sullivan Tr. at 42-43.

19   *See id.* at 51.

20   *See id.* at 44.

21   *See id.* at 45.

22   *See id.* at 54.

23   *See* Summ. ¶ 15; *see also* 10/18/06 Subcontract, Ex. H to Cohen Decl.

24   *See* O'Sullivan Tr. at 46.

25   *See id.* at 47-48.

26   *See id.* at 48.

27   *See id.* at 49.

28   *See id.*

29   *See id.*

30   *See id.* at 50.

31   *See* Summ. ¶ 2.

32   *See id.*

33   *See id.* ¶ 29.

34   *See* O'Sullivan Tr. at 56.

35   *See* Summ. ¶¶ 31, 32.

36   *See* O'Sullivan Tr. at 57.

37   *See id.* at 57-58.

38   *See id.* at 58.

39   *See* Summ. ¶ 34. When a union employee is employed by a non-union company, the employee will generally be paid pursuant to a "paymaster" arrangement, whereby a company that has signed the relevant collective bargaining agreement takes responsibility for ensuring that the employee receives the benefits specified by that agreement. *See* O'Sullivan Tr. at 56-57; Deposition of Joseph Cangelosi, Business Agent for Local 79, at 8-10, Ex. C to Affidavit of Lowell Peterson, counsel to defendants.

40   *See* Summ. ¶ 58.

41   *See* Trade Agreement Between Building Contractors Association, Inc. and Mason Tenders District Council of Greater New York, Exhibit Binder document no. 1.

42   *See id.* at 60.

43   *See* 6/14/07 Letter from Anthony Vita, Grievance Department Head, to Navillus, attention Donal O'Sullivan, Ex. L to Cohen Decl.

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...

Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 27 of 28

183 L.R.R.M. (BNA) 2692

44    *See* 7/13/07 Letter from Tamir W. Rosenblum, General Counsel, MTDC, to Navillus and Time Square, Ex. L to Cohen Decl.

45    *Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,* 154 F.Supp.2d 586, 597 (S.D.N.Y.2001) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)).

46    *See Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152-53 (2d Cir.2007); *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,* 211 F.3d 21, 24 (2d Cir.2000).

47    *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 97 (2d Cir.2005).

48    Stephen F. Befort, *Labor Law and the Double-Breasted Employer,* 1987 Wisc. L.Rev. 67, 67.

49    Some critics blame the advent of the double-breasted company for "stagnation of real wages and the erosion of union strength in the construction industry." Ben Marsh, Comment, *Corporate Shell Games,* 2 U. Pa. J. Lab. & Emp. L. 543, 545 (2000) (citing Lisa Belkin, *Showdown at Yazoo Industries,* N.Y. Times, Jan. 21, 1996, at 27; Steven G. Allen, *Unit Costs, Legal Shocks, and Unionization in Construction,* 16 J. Lab. Res. 367, 375-76 (1995)).

50    *King v. Audax Const. Corp.,* No. 02 Civ. 582, 2007 WL 2582103, at *3 n. 9 (E.D.N.Y. Sept. 5, 2007).

51    *Local One, Amalgamated Lithographers v. Stearns & Beale, Inc .,* 812 F.2d 763, 772 (2d Cir.1987).

52    *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995).

53    *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l,* 2 F.3d 24, 26 (2d Cir.1993).

54    *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988).

55    *Thomson-CSF,* 64 F.3d at 778 (citing *Carte Blanche,* 2 F .3d at 29).

56    1 William Mead Fletcher *et al., Fletcher Cyclopedia of the Law of Private Corporations* § 41.85 (perm. ed. rev.vol.1999).

57    *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir.2001) (quoting *Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir.1997)).

58    *Murray v. Miner,* 74 F.3d 402, 404 n. 1 (2d Cir.1996).

59    *Arculeo v. On-Site Sales & Marketing, LLC,* 425 F.3d 193, 198 (2d Cir.2005).

60    Some courts have observed that the tests overlap to a degree that suggests they are the same inquiry. *See Crest Tankers, Inc. v. National Maritime Union,* 796 F.2d 234, 236 n. 1 (8th Cir.1986) ("We discuss 'single employer' and 'alter ego' in this opinion as if they were two separate ideas.... In fact, what is really happening, it seems to us, is that a number of factors ... are being treated as relevant to the question whether one employer, formally separate, should be viewed as legally the same as another.").

61    *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995) (quoting *Garcia v. Elf Atochem N. Am.,* 28 F.3d 446, 450 (5th Cir.1994)).

62    *See id.* at 1241 ("We focus our inquiry ... on the second factor, centralized control of labor relations.").

63    *Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 747 (2d Cir.1996).

64    *Id.* at 747-48.

65    *Local One,* 812 F.2d at 771.

66    *Id.* at 770. *Accord Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co.,* 944 F.2d 1037, 1046 (2d Cir.1991) ( "The alter ego doctrine provides an analytical hook to bind a non-signatory to a collective bargaining agreement. The alter ego doctrine, while having the same binding effect on a non-signatory as the single employer/single unit doctrine, is conceptually distinct.") (citations omitted).

67    *Cuyahoga Wrecking Corp. v. Laborers Int'l Union, Local Union No. 210,* 644 F.Supp. 878, 882 (W.D.N.Y.1986) (citing *NLRB v. J .C. Penney Co.,* 559 F.2d 373, 375 (5th Cir.1977)).

68    *Herman v. RSR Security Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999). *Accord Cook,* 69 F.3d at 1241 ("We focus our inquiry ... on the second factor, centralized control of labor relations.").

69    *NLRB v. Solid Waste Servs., Inc.,* 38 F.3d 93, 94 (2d Cir.1994) (citing *Clinton's Ditch Coop. v. NLRB,* 778 F.2d 132, 138-39 (2d Cir.1985)).

70    *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 69 (2d Cir.2003).

71    *Id.* at 71-72 (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730(1947)).

72    *Arculeo,* 425 F.3d at 198.

73    *See Local One,* 812 F.2d at 771.

74    *Clinton's Ditch Coop.,* 778 F.2d at 137 (quoting *NLRB v. Browning-Ferris Indus.,* 691 F.2d 1117, 1122 (3d Cir.1982));

75    *Id.* (citing *Browning-Ferris,* 691 F.2d at 1122).

76    Defendants' Reply Memorandum of Law ("Def.Mem."), at 23.

77    *See* Memorandum of Law in Support of Motion for Preliminary Injunction ("Pl.Mem."), at 14.

Time Square Const., Inc. v. Mason Tenders Dist. Council..., Not Reported in...

Case 1:15-cv-08441-CM   Document 47   Filed 01/20/16   Page 28 of 28

183 L.R.R.M. (BNA) 2692

78   *See Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir.2003) (finding that a party " 'would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.' ") (quoting *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 985 (2d Cir.1997)).

79   *See* Def. Mem. at 22.

80   *See* Summ. ¶¶ 29, 31.

81   *See Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984) (noting that respect for corporate formalities is a factor in determining whether to pierce the corporate veil). There are some irregularities in the formation of the two companies-for example, Time Square was first incorporated in New York and then reincorporated in Delaware, and Navillus then made use of Time Square's New York registration, ostensibly to save filing fees. *See* O'Sullivan Tr. at 40. However, the irregularities are relatively minor and there is no evidence that the companies disregarded the formalities that attend corporations since that time.

82   I find that Donal never served as an officer of Time Square despite some evidence that on occasion he signed documents on behalf of the company. The evidence reveals that he only did so when Kevin was unavailable, and that he had no role in the management of the company. *See, e.g.,* O'Sullivan Tr. at 83 (noting that Donal rarely visited Time Square's offices).

83   *Cf. William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991) (finding that corporations were alter egos where they shared officers, office space, intermingled funds, and were not treated as separate profit centers).

84   *See* O'Sullivan Tr. at 36.

85   Defendants also point to a number of minor incidents that they say suggest that the companies are intertwined. These include a statement by Site Safety Supervisor Wayne Murphy that Time Square and Navillus were the "same company" and Time Square's representation to the City Department of Buildings that Murphy, who was employed by Navillus, was "our" site safety inspector. *See* Testimony of Joseph Cangelosi, 11/26 Tr. at 98; 6/11/07 Email from Fergal Conefrey of Time Square to the New York City Buildings Department, Exhibit Binder document no. 19. Time Square denies that the first remark was made and states that the latter representation simply indicated that Murphy was the site safety inspector for the site. *See* Testimony of Wayne Murphy, 11/26 Tr. at 93-94. I find that Murphy would have had no basis for knowing the corporate structure of the general contractor and subcontractor on the site, and that Time Square's explanation of the site safety inspector representation is quite plausible.

86   *See* Def. Mem. at 15-16.

87   *Cf. Cook,* 69 F.3d at 1241 (finding that single employer status could exist where applications for employment with a subsidiary went through the parent and the parent approved personnel reports and major employment decisions).

88   *See* Def. Mem. at 13.

89   *See, e.g.,* Summ. ¶ 33 ("Time Square directed the work of Albanese."); 11/26 Tr. at 20 (defendants' counsel stated that "There is no question that the duties [of Albanese] were assigned by Time Square.").

90   While the CBA requires Navillus to concede that it is a joint employer, it cannot require Time Square to make that concession unless the CBA binds Time Square. In short, the terms of the CBA would bind Time Square if the CBA applied to it. But the contents of the CBA are irrelevant unless Time Square is considered a joint employer with Navillus-the signatory to the CBA.

91   Because I find that Time Square and Navillus are neither joint nor single employers, it is unnecessary to determine whether their employees constitute a single bargaining unit.

---

**End of Document**                                                  © 2014 Thomson Reuters. No claim to original U.S. Government Works.